IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

TANYA M. CARTER, *et al.*

    Plaintiffs,

       v.

MANDISA TURNER WATKINS, *et al.*

    Defendants.

CIVIL NO.: WDQ-12-2813

\*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*

MEMORANDUM OPINION

Tanya M. Carter and Manchil R. Farley, Sr. ("Farley, Sr.") (collectively, the "plaintiffs") sued Mandisa Turner Watkins; Jameel S. Watkins ("Mr. and Mrs. Watkins"); The Vandel Group, LLC ("Vandel"); PNC Bank, National Association ("PNC"); and the Federal National Mortgage Association ("Fannie Mae") (collectively, the "defendants") for the death of their son Manchil R. Farley, Jr. ("Farley, Jr.") in a house fire. Pending is the plaintiffs' motion to remand. For the following reasons, the motion will be granted. This case and all pending motions will be remanded to the Circuit Court for Baltimore City.

I.    Background[1]

On August 25, 2006, Mr. and Mrs. Watkins, citizens of New

York, purchased a house in Baltimore City (the "Property"),

executing a Purchase Money Deed of Trust and Note in favor of

National City Mortgage, a division of National City Bank

(collectively, "National City").   *Id.* ¶¶ 7-8, 11-12.   On June 6,

2007, Manchil R. Farley, Jr. was born to Carter and Farley, Sr.,

both citizens of Maryland.   ECF No. 2 ¶¶ 1-3.

On November 21, 2008, Vandel, as agent for Mr. and Mrs.

Watkins, leased the Property to Farley, Sr. and Arnold R. Watts

for a term of one year, beginning November 21, 2008, and month-

to-month thereafter.   *Id.* ¶ 13.   On December 31, 2008, PNC, a

national bank with its principal place of business in

Pennsylvania, acquired National City.   *Id.* ¶¶ 15-16.

On June 5, 2009, after Mr. and Mrs. Watkins had failed to

make their mortgage payments, National City filed for

foreclosure in the Circuit Court for Baltimore City.   *Id.* ¶¶

17-18.   On January 7, 2010, Fannie Mae, a federally chartered

corporation with its principal place of business in the District

of Columbia, purchased the Property at a foreclosure auction.

*Id.* ¶¶ 19-20.   On June 3, 2010, the Circuit Court entered a

---

[1] In considering whether a defendant has been fraudulently
joined, the Court must resolve "all issues of . . . fact in the
plaintiff's favor."   *Hartley v. CSX Transp., Inc.*, 187 F.3d 422,
424 (4th Cir. 1999).   Unless otherwise indicated, the facts are
from the complaint.

Final Order Ratifying Report of Sale, and on June 17, 2010, a deed was executed transferring title to Fannie Mae. *Id.* ¶ 21.

In the notice of removal, Fannie Mae claimed that it began using a new property manager after it took title to the Property. ECF No. 1 at 4. It also asserted that it entered into a new lease with Farley, Sr. and Watts.[2] *Id.*

On August 8, 2010, a fire started in the property; Farley, Jr. was badly burned and died of smoke inhalation. ECF No. 2 ¶¶ 23, 29. No smoke detectors were installed in the Property.[3] *Id.* ¶ 28.

On August 7, 2012, the plaintiffs filed suit in the Circuit Court for Baltimore City alleging 12 counts of negligence and wrongful death. ECF No. 2. On September 13, 2012, process was served on Brenda Watkins for Mr. and Mrs. Watkins. ECF No. 23-2 at 1-2. That day, process was also served on Deborah Bentley in Baltimore for Vandel. *Id.* at 3.

On September 20, 2012, Fannie Mae answered and then removed to this Court. ECF Nos. 1, 4. That day, affidavits of service for Mr. and Mrs. Watkins and Vandel were filed in the Circuit

---

[2] Fannie Mae has not provided dates for these events. *See* ECF No. 1 at 4.

[3] The plaintiffs alternatively allege that if there were smoke detectors, they were not in good working order. ECF No. 2 ¶ 28.

Court.  ECF No. 23-2.  On September 21, 2012, PNC moved to

dismiss.  ECF Nos. 9, 10.

On October 12, 2012, Mr. and Mrs. Watkins emailed consent

to removal and telephonically indicated their consent to an

investigator.  ECF Nos. 18-1 to 18-3.  That day, James Bentley,

claiming to be "the authority of the Vandel Group" emailed

Fannie Mae's counsel, consenting to removal and claiming not to

"know any Deborah Bentley and she definitely does not live at"

the address where she was purportedly served in Baltimore.  ECF

No. 18-4.

On October 19, 2012, the plaintiffs moved to remand.  ECF

No. 19.  On November 5, 2012, Fannie Mae opposed, ECF No. 23,

and on November 19, 2012, the plaintiffs replied, ECF No. 24.

On April 23, 2013, the plaintiffs filed an emergency motion for

discovery, seeking the identity of other parties who may be

liable for Farley, Jr.'s death.[4]  ECF No. 25.

II.  Analysis

The plaintiffs assert that Fannie Mae's charter does not

provide for federal question jurisdiction and diversity

jurisdiction does not exist.[5]  ECF No. 19.  Fannie Mae contends

---

[4] On May 10, 2013, Fannie Mae indicated that it did not oppose
early discovery.  ECF No. 27.  Because the Court lacks
jurisdiction, the motion must be remanded.

[5] The plaintiffs also assert that removal was procedurally
improper.  See ECF No. 19 at 10.  Because the Court concludes

that its charter gives this Court federal question jurisdiction, and the Court has diversity jurisdiction because Vandel was fraudulently joined. ECF No. 23.

A.  Legal Standards

1.  Removal Under § 1441(a)

Under 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States for the district and division embracing where such action is pending." But, if the action may only be removed to the District of Maryland based on diversity jurisdiction, it may not be removed if any properly joined and served defendant is a citizen of Maryland. 28 U.S.C. § 1441(b)(2).

To remove a case, the defendant must file a notice of removal in the district court within 30 days after receiving the initial pleading, or within 30 days after the defendant receives a copy of a paper from which it is first evident that the case is removable. 28 U.S.C. § 1446(a)-(b). All defendants must join in or consent to the removal. *Id.* § 1446(b)(2)(A). The removing party has the burden of proving subject matter jurisdiction. *Md. Stadium Auth. v. Ellerbe Becket Inc.*, 407 F.3d

---

that it does not have jurisdiction, it does not reach these arguments.

255, 260 (4th Cir. 2005). Because removal raises "significant federalism concerns," the removal statutes must be strictly construed, and all doubts must be resolved in favor of remanding the case to state court. *Id.* (internal quotation marks omitted).

### 2. Fraudulent Joinder

The doctrine of fraudulent joinder allows a federal court to "disregard, for jurisdiction purposes, the citizenship of certain [in-state] defendants, assume jurisdiction over a case, dismiss th[ose] defendants, and thereby retain jurisdiction." *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999).[6] As the party asserting fraudulent joinder, Fannie Mae has the burden to "demonstrate either outright fraud in the plaintiff's pleading of jurisdictional facts or that there is *no possibility* that the plaintiff would be able to establish a cause of action against the in-state defendant in state court, . . . even after resolving all issues of law and fact in the plaintiff's favor." *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 424 (4th Cir. 1999) (internal quotation marks).[7] The Court must "resolve all doubts

---

[6] *See also B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. 1981) (applying the fraudulent joinder rule to party asserting that an in-state defendant had been fraudulently joined), *quoted in Mayes*, 198 F.3d at 464.

[7] A "glimmer of hope" for relief against the resident defendant will prevent a finding of fraudulent joinder. *See Mayes*, 198 F.3d at 466.

about the propriety of removal in favor of retained state court jurisdiction." *Id.* at 425 (internal quotation marks omitted).

That a complaint would not survive a defendant's motion to dismiss under Fed. R. Civ. P. 12(b)(6) does not mean that that defendant has been fraudulently joined: the standard is more favorable than the 12(b)(6) standard. *Id.* at 424. If there is any possibility of recovery, the defendant has not been fraudulently joined. *Id.* The Court may "consider the entire record," not only the complaint, to "determine the basis of joinder by any means available." *AIDS Counseling & Testing Ctrs. v. Grp. W Television, Inc.*, 903 F.2d 1000, 1004 (4th Cir. 1990). But, it may not act as a factfinder or "delv[e] too far into the merits in deciding a jurisdictional question." *Hartley*, 187 F.3d at 425.

B.    Fannie Mae and Federal Question Jurisdiction

Fannie Mae asserts that its charter confers federal question jurisdiction. ECF No. 23 at 8. Section 1723a(a) of Title 12 U.S.C. grants Fannie Mae the power "to sue and to be sued, and to complain and to defend, in any court of competent jurisdiction, State or Federal." Courts are split as to whether this provision automatically grants federal question jurisdiction in any suit involving Fannie Mae.

In *American National Red Cross v. S.G.*, 505 U.S. 247 (1992), the Supreme Court held that the Red Cross's charter "sue

7

and be sued" provision, which specifically mentioned the federal courts, conferred federal jurisdiction. *Id.* at 257. However, the Red Cross and Fannie Mae sue and be sued provisions are not identical. Congress's grant of powers to the Red Cross included the power to "sue and be sued in courts of law and equity, State or Federal, within the jurisdiction of the United States." 36 U.S.C. § 300105(a)(5). The key distinction--and source of the divisions in the courts--between Fannie Mae's and the Red Cross's powers is the inclusion in Fannie Mae's the phrase "of competent jurisdiction." *Compare* 12 U.S.C. § 1723a(a), *with* 36 U.S.C. § 300105(a)(1); *see also Ricon Del Sol, LLC v. Lloyd's of London*, 709 F. Supp. 2d 517, 522-23 (S.D. Tex. 2010).

Although several district courts have addressed the question of federal jurisdiction over charters with "of competent jurisdiction," the D.C. Circuit is the only court of appeals to have decided the issue. *See Pirelli Armstrong Tire Corp. Med. Benefits Trust ex rel. Fed. Nat'l Mortg. Ass'n v. Raines*, 534 F.3d 779 (D.C. Cir. 2008); *see also, e.g., Rincon Del Sol*, 709 F. Supp. 2d at 522-23 (collecting cases). The Red Cross charter language is based upon the FDIC's, which the Supreme Court held granted federal jurisdiction in *D'Oench, Duhme & Co v. FDIC*, 315 U.S. 447 (1942). *See Red Cross*, 505 U.S. at 257; *Knuckles v. RBMG, Inc.*, 481 F. Supp. 2d 559, 562 (S.D. W. Va. 2007). However, in 1954, Congress amended Fannie

8

Mae's charter from the FDIC and Red Cross formulation to its current version including "of competent jurisdiction."[8] The question is therefore: what did Congress intend by changing the statute, particularly away from a formulation that the Supreme Court had held created federal jurisdiction? *See Pirelli*, 534 F.3d 779, 797 (Brown, J., concurring in judgment); *see also Red Cross*, 505 U.S. at 263 ("[A] change in language [should] be read, if possible, to have some effect.").

Because the opinions in *Pirelli* exhaustively discuss the two positions on the interpretation of Fannie Mae's charter--and the parties have not presented any novel arguments--the Court will frame its analysis with the *Pirelli* opinions. The *Pirelli* majority interpreted "of competent jurisdiction" to mean compliance with (1) jurisdictional requirements in state courts of limited jurisdiction, (2) personal jurisdiction, and (3) enabling a suit to be brought in the district courts when the Tucker Act would otherwise require filing in the Court of Federal Claims. *Pirelli* (majority opinion), 534 F.3d at 785.

---

[8] *Compare* Pub. L. No. 73-479, § 301(c)(3), 48 Stat. 1246, 1253 (1934) ("[t]o sue and be sued, complain and defend, in any court of law or equity, State or Federal"), *with* Pub. L. No. 83-560, § 201, 68 Stat. 590, 620 (1954) ("to sue and to be sued, and to complain and to defend, in any court of competent jurisdiction, State or Federal").

Judge Brown, concurring in the judgment,[9] read "of competent jurisdiction" to mean subject-matter jurisdiction; that is, a court of competent jurisdiction is one that has subject matter jurisdiction independent from the charter language.[10] She further reasoned that Congress must have intended a substantive change to the charter because Congress added a phrase to depart from text already held to confer jurisdiction.[11] *Id.* at 799 (Brown, J., concurring in judgment).[12]

---

[9] Despite finding jurisdiction, the majority found that the complaint failed to state a claim under Delaware law. *See Pirelli*, 534 F.3d at 794. Judge Brown strongly disagreed with the finding of jurisdiction, but agreed that the complaint was correctly dismissed. *See id.* at 795 (Brown, J., concurring in judgment).

[10] *Pirelli*, 534 F.3d at 797-98 (Brown, J., concurring in judgment) ("As the Supreme Court has repeatedly emphasized, the phrase 'competent jurisdiction' almost always refers to subject-matter jurisdiction." (*citing Wachovia Bank, Nat'l Ass'n v. Schmidt*, 546 U.S. 303, 316 (2006); *United States v. Morton*, 467 U.S. 822, 828 (1984); *Califano v. Sanders*, 430 U.S. 99, 106 n.6 (1977); *Kontrick v. Ryan*, 540 U.S. 443, 454 (2004)).

[11] Additionally, the statute granting powers to Freddie Mac--located in the same title of the U.S. Code as Fannie Mae and substantially interrelated to it--does not contain the "of competent jurisdiction" language. *Pirelli*, 534 F.3d at 799 (Brown, J., concurring in judgment); *see* 12 U.S.C. § 1452(c)(7) ("[T]o sue and be sued, complain and defend, in any State, Federal, or other court"); *id.* § 1452(f)(2) ("[A]ll civil actions to which [Freddie Mac] is a party shall be deemed to arise under the laws of the United States, and the district courts of the United States shall have original jurisdiction of all such actions.").

[12] *See also Red Cross*, 505 U.S. at 263 ("[A] change in language [should] be read, if possible, to have some effect."); *id* at 252 ("Congress [is] presumed to intend [the] judicially settled

The Court agrees with Judge Brown and numerous other district courts that if the addition of "of competent jurisdiction" means anything, it must require an independent source of subject matter jurisdiction.[13] No other interpretation adequately explains Congress's departure from the language held to create federal question jurisdiction in *D'Oench, Duhme*.[14] Accordingly, Fannie Mae's charter does not provide a source of federal jurisdiction.

C. Vandel's Fraudulent Joinder

Fannie Mae contends that diversity jurisdiction exists between the plaintiffs and all the defendants except Vandel, which it asserts was fraudulently joined. *See* ECF No. 1 at 4. The plaintiffs contend that they have a cause of action against Vandel under Maryland law. ECF No. 19 at 22-43.

---

meaning of terms." (*citing United States v. Meriam*, 263 U.S. 179, 186 (1923)).

[13] *See, e.g., Pirelli*, 534 F.3d at 796-97 (Brown, J., concurring in judgment); *Fed. Nat'l Mortg. Ass'n v. Bahan*, No. 2:11-cv-01110-KJM-GGH, 2011 WL 2936021, at *3-5 (E.D. Cal. July 18, 2011); *Fed. Home Loan Bank of Indianapolis v. Banc of America Mortg. Sec., Inc.*, No. 1:10-cv-1463-WTL-DML, 2011 WL 2133539, at *1-2 (S.D. Ind. May 25, 2011); *Fed. Home Loan Bank of Seattle v. Deutsche Bank Sec., Inc.*, 736 F. Supp. 2d 1283, 1286 (W.D. Wash. 2010); *Rincon Del Sol*, 709 F. Supp. 2d at 522-25; *Knuckles*, 481 F. Supp. 2d at 562-65.

[14] *See Knuckles*, 481 F. Supp. 2d at 564; *see also Pirelli*, 534 F.3d at 795 (Brown, J., concurring in judgment) ("After 182 pages of briefing by 39 attorneys who have strained to squeeze this case into their preferred courtroom, I still--even after reading the majority opinion--haven't heard a decent argument for federal subject-matter jurisdiction.").

The plaintiffs assert that the complaint alleges negligence *per se* against Vandel by violating Maryland law and the Baltimore City Code by failing to install working fire alarms. ECF No. 19 at 25-32. Fannie Mae does not appear to dispute this, but asserts there is no cause of action because Vandel was not managing the property at the time of the fire. ECF No. 23 at 5-6.

The parties and the Court have found no Maryland cases controlling the question of Vandel's liability. In arguing their positions on Vandel's continuing liability, the plaintiffs and Fannie Mae rely on two cases: *Council of Co-owners Atlantis Condominium, Inc. v. Whiting Turner Contracting Co.*, 517 A.2d 336 (Md. 1986) and *Steele v. McNatt*, 657 N.E.2d 575 (Ohio Ct. App. 1995), respectively. *See* ECF Nos. 1 at 4, 19 at 35.

Fannie Mae's reliance on *Steele* is misplaced. In that case, the Ohio Court of Appeals held that tenants whose son died in a fire could not sue the prior owner of the premise. *Steele*, 657 N.E.2d at 577. However, the tenants did not lease the property until two years after the prior owner had sold it. *Id.* at 576. Accordingly, *Steele* is not relevant to this case; Vandel managed the property for a portion of the time that the plaintiffs and Farley, Jr. lived there.[15]

---

[15] *See Robinson v. C&L Assocs., L.L.C.*, 936 N.E.2d 546, 551 (Ohio Ct. App. 2010) (distinguishing *Steele* and reversing summary

*Whiting-Turner* is also not directly on point, but it is more persuasive than *Steele*. In that case, the Maryland Court of Appeals held that privity is not "an absolute prerequisite to the existence of a tort duty," and builders, developers, and architects may be liable for negligent construction. *See Whiting-Turner*, 517 A.2d at 343, 348. Although Fannie Mae is correct that *Whiting-Turner* is not directly applicable to this case, it does signal the Maryland courts' receptiveness to continuing negligence duties when properties have been sold. *See id.* at 338-39, 343-44. The Restatement (Second) of Property: Landlord & Tenant also contemplates the continuation of some tort duties by prior landlords, including those for violation of housing codes, after the sale of property.[16]

Additionally, the factual context of the plaintiffs' claim against Vandel is not entirely clear. Although there is no dispute that Fannie Mae took title to the Property before the fire, it has provided no details about the timing or content of the new lease contract or when Vandel was removed as the

---

judgment for former owner when tenant was injured by oven a few days after property was sold).

[16] *See* Restatement (Second) of Property: Landlord & Tenant §§ 16.3(2) & cmt. b, illus. 1.

property manager. *See* ECF No. 1 at 4. Accordingly, it is not clear when, if ever, Vandel's duties to Farley, Jr. ended.[17]

Construing the facts and the law in the light most favorable to the plaintiffs, a "glimmer of hope" exists for relief against Vandel. *See Mayes*, 198 F.3d 466. Fannie Mae has not provided any statute or caselaw foreclosing the plaintiffs' claim against Vandel, and it has not carried its burden to show there is no possibility that the facts establish Vandel's liability. *See Hartley*, 187 F.3d at 424. Because the Court "cannot say with certainty" that the Maryland courts would find no cause of action, Vandel is not fraudulently joined. *Id.* at 425.

The parties agree that Vandel is a citizen of Maryland,[18] like the plaintiffs. *See* ECF Nos. 1 at 3, 19 at 16. Because there is not complete diversity, this Court lacks diversity

---

[17] *See, e.g., Whiting-Turner*, 517 A.2d at 343; *Robinson*, 936 N.E.2d at 546; Restatement (Second), § 16.3 cmt. b.

[18] The parties incorrectly assume that Vandel is a citizen of Maryland because it is organized under Maryland law with its principal place of business in Maryland. *See* ECF Nos. 1 at 3, 19 at 16. Unlike the citizenship of corporations, LLCs have the citizenship of all their members. *Clephas v. Fagelson, Shonberger, Payne & Arthur*, 719 F.2d 92, 93-94 (4th Cir. 1983). It appears that James Bentley is a citizen of Maryland and a member of Vandel, giving it his citizenship. *See* ECF No. 18-4; *see also Md. Stadium Auth*, 407 F.3d 255, 260 (requiring doubts be resolved in favor of remand); *Clephas*, 719 F.2d at 93-94.

14

jurisdiction.[19]  Because the Court does not have federal question or diversity jurisdiction as asserted by Fannie Mae, the motion to remand will be granted.

III. Conclusion

For the reasons stated above, the motion to remand will be granted.  This case and all pending motions will be remanded to the Circuit Court for Baltimore City.


_____5/13/17_____               _____
Date                                William D. Quarles, Jr.
                                    United States District Judge

---

[19] *See Cent. W. Va. Energy Co. v. Mountain State Carbon, LLC*, 636 F.3d 101, 103 ("Section 1332 requires complete diversity among parties, meaning that the citizenship of every plaintiff must be different from the citizenship of every defendant.")